## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RONALD MARSHALL**                          **CIVIL ACTION**

**VERSUS**                                   **NO. 04-0219**

**N. BURL CAIN, WARDEN**                     **SECTION "A"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

## I.      FEDERAL PROCEDURAL BACKGROUND

On January 30, 2004, the petitioner, Ronald Marshall, filed a petition for federal habeas corpus relief seeking relief on the following grounds:[2] (1) The evidence was insufficient to support conviction for armed robbery. (2) Counsel was ineffective for allowing hearsay evidence of the anonymous telephone call at trial. (3) Counsel failed to investigate, interview and secure witnesses. (4) Counsel failed to investigate and find evidence to impeach the State's witness. (5) Petitioner was denied the right of confrontation when the trial court allowed inadmissable hearsay evidence at trial. (6) The state trial court's denial of defendant's motion to dismiss counsel was an abuse of discretion.

On July 2, 2004, I issued a report and recommendation, recommending that the petitioner's federal habeas corpus petition be dismissed with prejudice as untimely filed.[3] The district judge adopted the report and dismissed the petition as time barred.[4]

On December 14, 2005, the United States Court of Appeals for the Fifth Circuit determined that Marshall's federal habeas petition was timely filed and remanded the

---

[2]Rec. Doc. No. 1.

[3]Rec. Doc. No. 11.

[4]Rec. Doc. No. 13, 14.

case for further proceedings.[5]  The district judge thereafter referred the matter to me for

report and recommendation.[6]

II.     STATE COURT PROCEDURAL BACKGROUND

Although the prior report contains a detailed recounting of the procedural history

of the underlying state criminal proceedings, the relevant facts and history are repeated

here for ease of reference.

On April 1, 1998, Marshall was charged by bill of information in Orleans Parish

with armed robbery.[7]  The relevant facts as determined at trial were summarized by the

Louisiana Fourth Circuit Court of Appeal as follows:

> New Orleans Police Detective Calvin Brazley testified that on December
> 19, 1997, he received an anonymous tip by telephone that a man named Ronald
> Marshall had perpetrated a burglary at 2657 North Tonti Street in November
> 1997.  After Det. Brazley found no police report on such a burglary, he proceeded
> to the address given, but found no one home.  A neighbor informed him that the
> person who used to live there, Terry Hudson, moved to her mother's residence.
> Det. Brazley was unable to contact Ms. Hudson that day.  Later, while going
> through paperwork, Det. Brazley came across information related to a shooting
> incident he had handled on December 11, 1997.  The victim's name in that case
> was Ronald Marshall.  Det. Brazley compiled a photographic lineup containing
> Defendant's photo, and subsequently contacted Ms. Hudson.  Det. Brazley
> showed Ms. Hudson the lineup, and she immediately made a positive
> identification of Defendant's photograph.  Det. Brazley testified on cross
> examination that Ms. Hudson reported to him that three men armed with guns
> broke into her home, and the defendant was one of them.

---

[5]Rec. Doc. No. 22.

[6]Rec. Doc. No. 23.

[7]St. Rec. Vol. 1 of 4, Bill of Information, 4/1/98.

Terry Ann Hudson testified that on November 10, 1997, at approximately 8:30 p.m., she had just come home from the grocery store with her two children. She heard someone shaking the doorknob, and thought it was her younger brother. Ms. Hudson looked out of her peephole and saw two males on the pavement apparently passing by.  She opened her door, and discovered one male on her porch.  She asked him what he was doing, and stepped out of the residence.  Ms. Hudson testified that the man brandished a gun once she was outside the door. The man on the porch, along with the two others, pushed their way into the residence.  One man said all Ms Hudson had to do was to tell them where the money was, and they would be gone.  Ms. Hudson replied that she did not have any money, and pleaded with them not to harm her children.  One of the men told her to shut up.  Ms. Hudson subsequently identified Defendant as the one who told her to shut up.  Ms. Hudson testified that the men tore up her residence.  The men told her and the children to go to the back of the shotgun residence.  In doing so, Ms. Hudson accidentally bumped into the defendant, who told her never to do that again.  She and her children were made to lie down on the bathroom floor, and she was told by one or more gunmen not to call police, threatening that he knew where she lived, where she worked, and where her mother lived.  Ms. Hudson said that after the incident she was so frightened that she lived with her mother for three months.  At trial, Ms. Hudson identified the photographic lineup shown to her by Det. Brazley, as well as the photograph of the defendant she previously identified.

Ms. Hudson stated on cross examination that the defendant was not the individual who was at her door when she opened it.  She said she saw the defendant going through her things in the second room of the residence.  Ms. Hudson testified on redirect examination that the men took some costume jewelry and sixty dollars from her dresser.

State v. Marshall, 774 So.2d 244, 247-48 (La. App. 4th Cir. 2000); St. Rec. Vol. 2 of 4,

4th Cir. Opinion, 99-KA-2176, August 30, 2000.

Marshall was tried by a jury on July 15, 1998, and found guilty as charged.[8]

Marshall was later sentenced on November 25, 1998, as a second offender to serve 49½

---

[8]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 7/15/98; Jury Verdict, 7/15/98; St. Rec. Vol. 2 of 4, Transcript of Jury Trial, 7/15/98.

years in prison without benefit of parole, probation or suspension of sentence.[9]  The trial court also denied Marshall's motion for post-verdict judgment of acquittal and motion to reconsider the sentence.[10]

Marshall appealed his conviction through appointed counsel to the Louisiana Fourth Circuit Court of Appeal, raising one assignment of error that counsel was ineffective for allowing the jury to hear the hearsay testimony of Detective Brazley regarding the anonymous tip.[11]  Marshall also filed five pro se assignments of error:[12] (1) The state trial court erred in admitting the hearsay testimony of Detective Brazley. (2) Counsel was ineffective for allowing the hearsay testimony of Detective Brazley regarding the anonymous tip. (3) The state trial court erred in denying his motion to dismiss or substitute counsel without a hearing. (4) The evidence was insufficient to support the conviction. (5) The guilty plea in the predicate offense to the multiple bill was unconstitutional.

_____

[9]St. Rec. Vol. 1 of 4, Multiple Bill, 7/23/98; Sentencing Minutes, 11/25/98; St. Rec. Vol. 2 of 4, Sentencing Transcript, p. 1-2, 11/25/98; see also, St. Rec. Vol. 1 of 4, Minute Entry, 11/13/98; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, pp. 7-8, 11/13/98.

[10]see also, St. Rec. Vol. 1 of 4, Minute Entry, 11/13/98; Motion to Reconsider Sentence (undated); St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, pp. 7-8, 11/13/98.

[11]State v. Marhsall, 774 So.2d at 244; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2176, 8/30/00.

[12]Id.

The appellate court affirmed the conviction on August 30, 2000, finding that Marshall's first pro se argument was barred from review for lack of a contemporaneous objection and finding the other grounds to be without merit.[13] Marshall's pro se request for rehearing was refused by the Louisiana Fourth Circuit on September 29, 2000.[14]

Marshall thereafter filed a pro se writ application in the Louisiana Supreme Court on November 3, 2000, seeking review of his conviction and sentence.[15] The application was denied by the court without reasons on October 26, 2001.[16]

On July 31, 2002, Marshall filed an application for post-conviction relief in the state trial court asserting nine grounds for relief:[17] (1) Counsel was ineffective because he did not inform petitioner of the consequences of rejecting the State's plea offer of 10 years in prison. (2) Counsel was ineffective on direct appeal. (3) Trial counsel was ineffective by allowing prejudicial hearsay evidence at trial. (4) A conflict existed with counsel during pretrial proceedings and trial. (5) Counsel was ineffective because he failed to investigate, interview and secure important witnesses. (6) Counsel was

---

[13]Id.

[14]Id.; St. Rec. Vol. 2 of 4, Motion for Rehearing, 9/11/00.

[15]St. Rec. Vol. 3 of 4, La. S. Ct. Application for Writs, 00-KO-3038, 11/3/00; St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2000-KO-3038, 11/3/00.

[16]State v. Marshall, 799 So.2d 1149 (La. 2001); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2000-KO-3038, 10/26/01.

[17]St. Rec. Vol. 1 of 4, Application for Post Conviction Relief, 7/31/02.

ineffective because he failed to investigate and find documentary evidence to determine whether the anonymous phone call actually occurred. (7) Counsel was ineffective because he did not familiarize himself with pretrial transcripts to impeach the State's witnesses with prior inconsistent statements. (8) Counsel was ineffective because he did not investigate and find evidence to impeach the State's witnesses at trial. (9) Counsel was ineffective because he did not move for a continuance to secure the attendance of witnesses and complete preparation for trial. The trial court denied the application without reasons by judgment issued August 9, 2002.[18]

Marshall sought review of that ruling in the Louisiana Fourth Circuit Court of Appeal on August 30, 2002.[19] The court denied the application on November 8, 2002, finding no error in the trial court's judgment denying relief or in its failure to conduct an evidentiary hearing on the post-conviction application.[20] Marshall's subsequent writ application in the Louisiana Supreme Court was denied without reasons on December 12, 2003.[21]

---

[18]St. Rec. Vol. 1 of 4, Trial Court Judgment, 8/9/02.

[19]St. Rec. Vol. 3 of 4, Application for Writs, 2002-K-1769, 8/30/02.

[20]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2002-K-1769, 11/8/02.

[21]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 02-KH-3150, 12/20/02; State ex rel. Marshall v. State, 860 So.2d 1146 (La. 2003); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2002-KH-3150, 12/20/02.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Marshall's petition, which, for reasons discussed below, is deemed filed in this court on January 20, 2004.[23]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Marshall's petition was filed by the clerk of court on January 30, 2004.  Marshall dated his signature on the petition on January 20, 2004.  This is the earliest date on which he could have delivered the petition to prison officials for mailing.

In the instant case, the State concedes that Marshall's claims are exhausted, but argues that the fifth claim, regarding inadmissible hearsay, is procedurally barred from federal review and the remaining claims are without merit.

IV.    PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

In his fifth claim before this court, Marshall alleges that the trial court erred in allowing into evidence the hearsay testimony of Detective Brazley, the officer who received the anonymous telephone call identifying Marshall as the perpetrator. Marshall raised the claim pro se on direct appeal. The Louisiana Fourth Circuit held that, pursuant to La. Code Crim. P. art. 841(A), Marshall was precluded from raising the claim because counsel did not make a contemporaneous objection to the testimony at trial. La. Code Crim. P. art. 841(A) provides in relevant part that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

Marshall raised this same claim again in his state court application for post-conviction review. The trial court denied the application without reasons. Thereafter, the Louisiana Fourth Circuit found no error in the trial court's denial but offered no further reasons for its ruling. The Louisiana Supreme Court also offered no explanation for its one word denial.

Thus, considering the last reasoned decision on this issue, the Louisiana Fourth Circuit on direct appeal declined review of the hearsay claim on procedural grounds that it sought review without a contemporaneous trial objection in violation of La. Code Crim. P. art. 841(A).

A.   <u>INDEPENDENT AND ADEQUATE</u>

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.   A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.   <u>Amos</u>, 61 F.3d at 338.   To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.   <u>Glover</u>, 128 F.3d at 902.   A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.   <u>Id</u>.

In this case, the Louisiana Fourth Circuit refused to consider Marshall's hearsay claim pursuant to La. Code Crim. P. art. 841(A), which requires that an objection be made at trial to preserve an evidentiary issue for appeal.

The record shows, as found by the Louisiana Fourth Circuit, that counsel did not object to Brazley's hearsay testimony at trial.[24]   Thus, the state appellate court used the Article 841 "lack of contemporaneous objection" rule to find that the issue was not preserved for appeal.

It is well-settled that Louisiana's contemporaneous-objection rule is an independent and adequate state procedural ground.   <u>Duncan v. Cain</u>, 278 F.3d 537, 541

---

[24]St. Rec. Vol. 2 of 4, Trial Transcript, p. 20, 7/15/98; <u>State v. Marshall</u>, 774 So.2d 248-49; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2176, p. 5, 8/30/00.

(5th Cir. 2002) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977)).  When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review.  <u>Id</u>.

Marshall argues, however, that the application of this Article 841 bar was improper in his case because he filed a motion to suppress hearsay evidence <u>prior</u> <u>to</u> trial, which should have preserved the issue for appeal.

Even if Marshall's suggestion were true, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  <u>Narvaiz v. Johnson</u>, 134 F.3d 688, 695 (5th Cir. 1998) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) and <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990), and citing <u>West v. Johnson</u>, 92 F.3d 1385, 1404 (5th Cir. 1996)); <u>accord</u> <u>Turner v. Johnson</u>, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999).  Thus, only when state courts apply a procedural bar that has no foundation in the record or basis in state law will the federal courts not honor that bar. <u>Davis v. Johnson</u>, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); <u>see also</u>, <u>Johnson v. Lensing</u>, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (La. Code Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); <u>Poree v. Cain</u>, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (same).

Contrary to Marshall's assertion, however, the state trial court record does not contain a copy of a motion to suppress hearsay evidence or any motion containing a substantive argument of that nature.  The record does contain and Marshall has presented this court with an order issued by the Louisiana Fourth Circuit on June 15, 1998, which reads as follows:[25]

> WRIT DENIED.  This court finds no error in the trial court's denial of relator's motion to dismiss hearsay statement.

Attached to Marshall's same exhibit is a copy of an unfiled, undated "writ of certiorari motion to dismiss hearsay statement" prepared pro se by Marshall and which is captioned for the Louisiana Supreme Court, not the state trial court.[26]  Nevertheless, in this pleading, Marshall argues that the trial court erred in finding probable cause to support the arrest and prosecution based on the information received from an unreliable, anonymous caller.  The only reference to a "hearsay statement" in that document is found on page two, where Marshall argues that the anonymous caller was "only a witness to a hearsay statement made in a public bar."  The motion, in spite of its caption, did not challenge the testimony of Officer Brazley (or the caller) as inadmissable hearsay.  The challenge was to the identification and the reliability of the anonymous informant.

---

[25]St. Rec. Vol. 1 of 4, 4th Cir. Order, 98-K-1351, 6/15/98; Rec. Doc. No. 1, Exh. F, 4th Cir. Order, 98-K-1361, 6/15/98.

[26]Rec. Doc. No. 1, Exh. F, Writ of Certiorari, Motion to Dismiss Hearsay Statement.

Marshall nevertheless argues that, pursuant to La. Code Crim. P. art. 703(f), the filing of this motion to suppress the hearsay statement preserved the hearsay objection for appeal. La. Code Crim. P. art. 703(f) is a pretrial procedural rule which provides that "[a] ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress."

However, Louisiana law is clear that a motion to suppress must raise the same grounds for an objection to preserve the objection for later review. State v. Jones, 891 So.2d 760, 776 (La. App. 4th Cir. 2004). A new basis for an objection cannot be raised for the first time on appeal. State v. Musgrove, 774 So.2d 1155, 1159 n.2 (La. App. 2d Cir. 2000) (citing La. Code Crim. P. 841 and State v. Cressy, 440 So.2d 141 (La. 1983)). The record shows that this is what Marshall did in his appeal. He raised a hearsay objection to Brazley's testimony that was not included in his prior motion to suppress.

Furthermore, the language of La. Code Crim. P. art. 703(f) reflects that the filing of a motion to suppress will preserve an evidentiary issue so that it can be objected to at trial. Louisiana law requires that a motion to suppress "also be filed in accordance with La. Code Crim. P. art. 841," which requires a contemporaneous objection at trial. State

14

v. Hollins, 742 So.2d 671, 680 (La. App. 5th Cir. 1999).  As conceded by Marshall, his counsel made no such objection a trial.

Without a contemporaneous objection, or a motion to suppress raising the same arguments presented on appeal, the issue was not preserved on appeal.  Id., at 680.  The application of La. Code Crim. P. art. 841 was adequate to bar review of Marshall's hearsay claim.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

In this case, Marshall has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Marshall from raising the claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

Construed broadly, Marshall's petition may urge that his trial counsel erred in failing to urge a hearsay objection at trial.  The law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." Murray, 477 U.S. at 486.  Supreme Court doctrine will allow a petitioner to establish cause through the alleged ineffective assistance of his counsel if he can establish that counsel's failure to raise the issue was itself constitutionally deficient performance.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

I have reviewed Marshall's allegation that his trial counsel was ineffective for failure to object to the hearsay testimony later in this report.  Having determined that counsel was not ineffective in that regard, I find that Marshall has failed to show cause sufficient to excuse the procedural bar imposed upon his hearsay claim.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective

cause for his default, the court need not determine whether prejudice existed, and Marshall has not alleged any actual prejudice. <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Marshall's hearsay claim is therefore procedurally barred from review by this federal habeas corpus court.  <u>See</u> <u>Trest v. Whitley</u>, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[27]

C.    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

Marshall may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor

---

[27]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. <u>Id</u>.

17

requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Marshall does not present and the record contains nothing that suggests his actual innocence.  On the contrary, the record contains substantial evidence of his guilt.  His claims address procedural failings in the underlying criminal proceedings and the credibility of the witnesses, not his actual innocence.  For these reasons, Marshall has failed to overcome the procedural bar to his hearsay claim.  The claim is procedurally barred and must be dismissed with prejudice for that reason.

V.      STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS

Marshall has asserted four other claims which are not procedurally barred.  As to the non-barred claims, 28 U.S.C. §§ 2254(d)(1) and (2), as amended by the AEDPA, contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'"   Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"   Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25).

VI.    INSUFFICIENT EVIDENCE (CLAIM NO. 1)

Marshall alleges that the evidence was not sufficient to support the verdict of guilty of armed robbery.  Marshall raised this claim pro se on direct appeal to the Louisiana Fourth Circuit.

The appellate court relied on the standard of review set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979), and related state cases, to find that the evidence was sufficient to support the verdict.  Marshall argued on appeal that the identification by the victim/witness, Terry Hudson, was unreliable and her testimony was therefore not credible.  The court determined that both the in-court and out-of-court identifications by the witness did not result from a suggestive procedure.  The court also held that the witness's trial testimony was credible and sufficient to link the defendant to the crime

scene.  The court concluded that the evidence was sufficient and the claim was without merit.

The Louisiana Supreme Court denied Marshall's subsequent application without reasons and is presumed to have relied upon the same grounds as the Louisiana Fourth Circuit's reasoned opinion.  Ylst, 501 U.S. at 802.

A claim of insufficient evidence presents a mixed question of law and fact.  Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in Jackson, 443 U.S. at 319, requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2000); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).

Marshall was charged and convicted of armed robbery in violation La. Rev. Stat. Ann. §14:64.  Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by

use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64; State v. Collins, 910 So.2d 454, 457-58 (La. App. 5th Cir. 2005).

In this case, Marshall does not challenge the evidence that each element of the offense was proven at trial. Instead, he complains that the identification testimony of the State's sole fact witness, the victim, Terry Ann Hudson, was not credible. He argues that her initial photographic identification was untimely and suspect. He also claims that her testimony regarding the robbery did not corroborate her testimony that she could see the faces of, and identify, the robbers.

Although in some respects the evidence pointing to Marshall's guilt is based on the credibility of the victim, this alone is insufficient to supplant the jury's determination of guilt. Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir. 1998). Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses. Schlup v. Delo, 513 U.S. 298, 330 (1995) (under Jackson resolving credibility issues is generally beyond the scope of appellate review); United States v. Goff, 155 Fed. Appx. 773 (5th Cir. 2005) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir.1993)). Instead, the narrow standard of review under Jackson "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. "The trier of fact has broad discretion to 'resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences

22

from basic facts to ultimate facts.'" <u>Green</u>, 160 F.3d at 1047 (quoting <u>Jackson</u>, 443 U.S. at 319.

In the instant case, Hudson testified that on November 10, 1997, she heard someone playing with the doorknob on the door to her home.[28]   Thinking it was her brother, she opened the door and saw a man with a gun standing on her front porch.[29] She tried to close the door but could not.[30]   She then realized there were two other men with the gunman.[31]   One man stood over her and her son with a gun in his hand while the others went through her belongings in the house.[32]

At trial, Hudson identified Marshall as the man who was going through the belongings in her bedroom and who kept yelling for her to shut up.[33]   The men eventually told her to go to the back of the house where her daughter was.[34]   While moving to the back of the narrow shotgun house, Hudson bumped into Marshall and he told her not to do it again.[35]   Before the men left, Marshall also threatened Hudson and told her not to

---

[28]St. Rec. Vol. 2 of 4, Trial Transcript, p. 37, 7/15/98.

[29]<u>Id</u>., at p. 37.

[30]<u>Id</u>., at p. 38.

[31]<u>Id</u>.

[32]<u>Id</u>.

[33]<u>Id</u>., at p. 39.

[34]<u>Id</u>., at p. 39-40.

[35]<u>Id</u>., at p. 40.

call the police.[36]   The men took costume jewelry and $60 from her dresser.[37]   Hudson

testified that she moved to her mother's home for three months after the incident because

she was afraid.[38]   While there, she met with a police detective who showed her a group

of photographs.[39]   She identified Marshall's picture immediately from the line-up.[40]

Officer Brazley testified that he located Hudson through the address given to him

by an anonymous caller.[41]   He tracked her down at her mother's home and left his card.[42]

In the meantime, he put together a photographic line-up with a picture of Ronald

Marshall included.[43]   When Hudson agreed to meet with him, she was able immediately

to identify Marshall's picture without any influence or hesitation.[44]

---

[36]Id.

[37]Id., at p. 53.

[38]Id., at p. 41.

[39]Id.

[40]Id.

[41]Id., at p. 11-12.

[42]Id., at p. 12.

[43]Id., at p. 13.

[44]Id., at p. 13-14.

Hudson also testified at trial that she could see Marshall going through her things in the bedroom while she was sitting on the floor of the front room.[45]  She stated that, although she could not describe the other two men, she remembered Marshall because "he was the main one behind it all" and he was the darkest.[46]  Hudson also testified that Officer Brazley did not mention Marshall's name and did not tell her what picture to choose.[47]

The record shows that the State presented evidence that Hudson was able to identify Marshall both in court and out of court.  Her testimony established that Marshall and the two other men had guns.  The men held Hudson and her children at gunpoint while they went through her home.  They also took costume jewelry and cash from Hudson's home.  The foregoing testimony proves every element of the crime of armed robbery.

With regard to Marshall's challenge to the reliability of the identification, the record demonstrates, as the Louisiana Fourth Circuit determined, that the identification process was not suggestive, relying on the United States Supreme Court precedent in Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977).  In Manson, the United States Supreme Court reaffirmed several factors enumerated in Neil v. Biggers, 409 U.S. 188,

---

[45]Id., at p. 48.

[46]Id.

[47]Id., at p. 51.

199 (1972), that should be considered when reviewing the reliability of a witness's identification, including: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself.  Passman v. Blackburn, 652 F.2d 559, 570-71 (5th Cir. 1981); Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990).

The record indicates that Hudson had several opportunities to view Marshall while he was in her home and as he rummaged through her belongings.  She also bumped into him as she passed him in the bedroom and they exchanged words.  Both Hudson and Officer Brazley testified that she did not hesitate to pick Marshall's picture from the lineup.  While some six weeks may have passed between the crime and the lineup, Hudson plausibly testified that she would never forget his face or the fear she experienced.

The evidence presented at trial was sufficient to establish all of the elements necessary to prove that an armed robbery occurred.  In addition, the victim positively identified Marshall as a perpetrator and the identification process was reliable, not suggestive.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Jackson or Manson.  Marshall is not entitled to relief on this claim.

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. 2, 3, 4)

Marshall raises three grounds of ineffective assistance by his trial counsel.  He alleges that his counsel erred by failing to object to the hearsay testimony of Officer Brazley, failed to investigate, interview and secure witnesses, and failed to investigate and find impeachment evidence.

Marshall raised ineffective assistance of counsel on direct appeal and in his application for post-conviction relief.  On direct appeal, Marshall and his appointed counsel alleged that trial counsel was ineffective because he failed to object to Brazley's hearsay testimony.  The Louisiana Fourth Circuit held that the decision not to object was a purposeful trial strategy and did not amount to deficient performance.

This claim and the remaining grounds of alleged ineffective assistance of counsel were raised in Marshall's application for post-conviction relief.  The application was denied without reasons by the state trial court.[48]  The Louisiana Fourth Circuit indicated that it reviewed the application "on the merits" and, without further analysis or citation, found no error in the trial court's denial of relief.[49]  The Louisiana Supreme Court offered no reasons for its denial of Marshall's subsequent writ application to that court.

---

[48]St. Rec. Vol. 1 of 4, Trial Court Judgment, 8/9/02.

[49]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2002-K-1769, 11/8/02.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel.

In Strickland, the court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, the court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made

after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is

on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466

U.S. at 689.

A.      FAILURE TO OBJECT TO HEARSAY (CLAIM NO. 2)

The record reflects that counsel did not object to the hearsay trial testimony of

Officer Brazley, who testified about the phone call he received from an anonymous

person who identified Marshall as the person who committed the armed robbery at

Hudson's home.  Prior to Brazley's testimony, and for no reason apparent from the trial

transcript, the state trial judge made the following comment on the record:[50]

> THE COURT:      Just as a precautionary note, let us remind both sides
> that hearsay is not admissible.  Hearsay is not admissible.  I mention that
> only because of certain comments by the State during its opening argument.

The prosecutor had made reference in the opening argument to the alleged

statements of the anonymous caller.[51]

During the course of Officer Brazley's cross-examination, defense counsel asked

him to repeat what the anonymous caller told him over the phone.  The state trial judge

interrupted the witness and had following brief exchange with the defense counsel:[52]

> THE COURT:      I take it, as part of your strategy, you have obviously
>                 not objected to any of this hearsay – –

---

[50]St. Rec. Vol. 2 of 4, Trial Transcript, p. 9, 7/15/98.

[51]Id., at p.5.

[52]Id., at p. 20.

MR. MEYERS:     No, Judge.

THE COURT:      I realize that you had discussed earlier the possibility that, strategically, this would be a part of the – –

MR. MEYERS:     First of all, let me – –

THE COURT:      – – your proceeding.

Counsel made no further comment and proceeded with his next question to Officer Brazley.

Under the circumstances of the case, the tactical decision not to object to the testimony was objectively reasonable.  See Lamb, 179 F.3d at 358. Throughout the questioning of Brazley and in closing arguments, defense counsel attempted to show that Brazley had it out for Ronald Marshall and either did not receive a phone call or used the anonymous phone call as a way of retaliating against Marshall for his role in another unrelated investigation.  The record tends to show that counsel did not object to the testimony about the phone call because he sought to use it to challenge the officer's credibility, the veracity of the investigation and the identification process.

The decision to pursue these questions before the jury was within the ambit of counsel's trial strategy.   An unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.  Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004).  "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it

has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted). In this case, Marshall has not shown that counsel's trial strategy was either unreasonable under the circumstances or deficient performance.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Marshall is not entitled to relief on this claim.

B.    FAILURE TO INVESTIGATE, INTERVIEW AND SECURE WITNESSES (CLAIM NO. 3)

Marshall alleges that he told his lawyer that Officer Brazley framed him because he reneged on a deal to provide Brazley with information regarding a different investigation. Marshall claims that he gave the names of witnesses to his attorney and the attorney failed to contact those people or subpoena them for trial. Marshall concedes that counsel used a "bad blood between them" theory to attempt to establish that Brazley forced the investigation to point to Marshall. However, Marshall argues that counsel's failure to call the witnesses to support that theory was deficient performance.

Marshall raised this claim in his application for post-conviction relief, which was denied without reasons by the state courts.

As Marshall concedes, his lawyer advanced a theory that Marshall was set up or targeted by Brazley. This theory was presented in counsel's opening argument:

This is a case where the investigating officer had a prior relationship with this defendant. This is a case where the arresting officer, the investigating officer, went to lengths that police officers simply do not go to, to show Terry Hudson a photo lineup that contained a picture of Ronald Marshall.[53]

In an effort to taint the investigative process, counsel cross-examined Officer Brazley at length, from his receipt of the anonymous call, to finding out that the crime was never reported, to tracking Hudson down.[54] Counsel questioned Brazley about his prior involvement with Marshall, including the investigation of a shooting on December 11, 1997, in which Marshall was the victim.[55] Brazley repeatedly denied meeting Marshall before the shooting incident.

Counsel continued his attempt to discredit Brazley's zealous investigation of the anonymous tip:[56]

> Q.    And it's only coincidental that a week after you handled the shooting where you hear the name Ronald Marshall, as you say for the first time, that you get this anonymous tip about a person named Ronald Marshall is purely coincidence.
>
> A.    That's what it seems to be, sir. I got the call. I can only tell you what was stated.

---

[53]St. Rec. Vol. 2 of 4, Trial Transcript, p. 7-8, 7/15/98.

[54]Id., at p. 15-26.

[55]Id., at p. 22-24.

[56]Id., at p. 25-26.

Q.    And it would also be coincidental that the call that just happened to
      have come in on that night happened to be picked up and answered
      by you.

A.    Because I work there, sir, I answered the phone several times.

Q.    And it would also be coincidental that out of all the cases – – all of
      the anonymous tips that you've described that you get, this is the
      one that you decide to make four separate inquiries into, including
      three trips out of your district to various locations.

A.    First of all, sir, that is not out of my district; second of all – –

Q.    Excuse me; out of your – – out of your station, I apologize.

A.    We – – I'm not a – – we are assigned to investigate, sir, and every
      case that I'm assigned I investigate thoroughly.  There will be no –
      – nothing left undone.

In his closing argument, Marshall's counsel re-urged his two theories of the case.

One was that Terry Hudson was robbed but provided a questionable and unreliable

identification of Marshall.  The second theory was that Officer Brazley was out to get

Ronald Marshall:[57]

      The first theory being that this is a situation where Officer Brazley
      wanted to get Ronald Marshall, and he created a situation where he could
      get Ronald Marshall.  And that situation involved getting somebody to
      identify Ronald Marshall as being the person who robbed them.  I don't
      know if that's the case or not.

_____

[57]Id., at p. 59.

34

Counsel challenged the "zealous" investigation conducted by Officer Brazley as the result of an anonymous tip on an unreported crime again later in his closing.[58]  He argued to the jury that Brazley "got the man he wanted to get.  He's got Ronald Marshall, and he's got him jammed on a robbery that Ronald Marshall didn't commit."[59]

The decision to pursue this defense was within the parameters counsel's clearly enunciated trial strategy and in keeping with Marshall's own suggestion that he was set up by Brazley.  An unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.  Martinez, 99 Fed. Appx. at 543.  In this case, Marshall has not shown that counsel's trial strategy was deficient or unreasonable under the circumstances of the case.

Marshall now suggests, however, that his counsel should have called defense witnesses to testify about Brazley's familiarity with him before December 1997.  In doing so, Marshall refers the court to the holding in Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985), in which the Unites States Fifth Circuit Court of Appeals held that counsel should have interviewed witnesses and called them to trial.  Nealy involved counsel's failure to interview and call two alibi witnesses to corroborate Nealy's defense that he did not commit the murder for which he was charged. The Fifth Circuit determined that Nealy was prejudiced by the lack of corroborating testimony, especially in light of the

_____

[58]Id., at p. 61-62.

[59]Id., at p. 64.

fact that the State's case was based on the testimony of one witness, who had himself confessed to the murder.

The Nealy case is unpersuasive here.  First, Nealy is not Supreme Court precedent relevant to this court's review under the AEDPA.  Second, Marshall did not testify at trial, as did Nealy.  Therefore, there was no testimony from the defendant to be corroborated.

Next, Marshall does not suggest and the record does not indicate that Marshall had alibi witnesses like the petitioner in Nealy.  Instead, Marshall suggests that he had two witnesses, Raquel Diaz and Sandra Young, who could have testified that Brazley knew him prior to December 11, 1997.

According to Exhibit E to Marshall's petition, Raquel Diaz, was his girlfriend and the person who shot him on December 11, 1997.  Her potential impact on the jury or willingness to testify on behalf of Marshall is uncertain.  Nevertheless, Marshall has not provided any statements from these two people to support his contention that they were confronted and threatened by Brazley or that any such threats were related to him.

Furthermore, "[d]efense counsel is not required . . . 'to investigate everyone whose name happens to be mentioned by the defendant.'"  Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985) (quoting United States v. Cockrell, 720 F.2d 1423, 1428 (5th Cir.1983)).  "'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

36

witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).  Thus, where the only evidence of an uncalled witness's testimony comes from the defendant, federal courts are reluctant to find ineffective assistance on habeas review. Schwander, 750 F.2d at 500.

Finally, Marshall alleges that counsel did not investigate.  He does not indicate what counsel should have investigated, other than the two uncalled witnesses.  A federal habeas court will not find deficient performance where counsel's decision not to investigate was part of a clearly developed defensive strategy or where the defendant can point to no specific evidence that would have been uncovered by a more thorough investigation.  Nealy, 764 F.2d at 1178 (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984), Larsen v. Maggio, 736 F.2d 215, 218 (5th Cir. 1984) and United States v. Cockrell, 720 F.2d at 1428-29).

For the foregoing reasons, counsel's failure to call witnesses or to investigate further, under the circumstances of this case, was not clearly deficient or prejudicial.  The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.  Marshall is not entitled to relief on this claim.

C.   COUNSEL FAILED TO INVESTIGATE AND FIND EVIDENCE TO IMPEACH THE STATE'S WITNESS (CLAIM NO. 4)

Marshall alleges that Officer Brazley was not the arresting or investigating officer at the shooting on December 11, 1997.  He alleges that he informed his counsel of this

before trial.  Marshall argues that his attorney should have used the police report from that shooting to impeach Officer Brazley and contradict his claim that he was involved in the investigation and arrest for the shooting. Marshall raised this claim in his application for post-conviction relief which was denied without reasons by the state courts.

At trial, Brazley testified on cross-examination that sometime after receiving the anonymous call about Marshall, he realized that he "handled a shooting where I arrested the person who shot him."[60]  He later testified that his role as an investigator at the shooting was to render assistance to Marshall as the victim.[61]

The police report attached to Marshall's petition as Exhibit E reflects that "Fifth District DIU Unit 1563 manned by Det. C. Brazley" was on the scene.  Brazley is not listed as the arresting officer.

Marshall suggests in his petition that this information would have impeached Brazley's credibility because, at trial, he said he arrested the shooter, Raquel Diaz. Marshall also contends that this would show that Brazley was at the scene for his own personal reasons.

The police report regarding the December 11, 1997 incident was not prepared by Brazley.  The report does not indicate what Brazley's role at the scene was, although it

---

[60]St. Rec. Vol. 2 of 4, Trial Transcript, p. 22, 7/15/98.

[61]Id., at p. 25.

indicates that another officer was the actual arresting officer.  The fact that Brazley did not actually arrest Diaz is not, however, necessarily a challenge that would have altered the jury's opinion of him or the evidence of guilt.

Brazley did not deny being present at the scene and meeting Marshall at the scene of the shooting.  Marshall, therefore, has not shown that this report would have had an impact on the outcome of his trial.  Presentation of the police report would not have served to impeach Brazley, and the failure to introduce the report was not deficient performance on the part of counsel.  To the extent Marshall alleges that the report should have been further investigated, he has not provided a basis for this court to second guess counsel's approach to the case.  See Nealy, 764 F.2d at 1178 (the failure to investigate is not deficient performance where counsel's decision not to investigate was part of a clearly developed defensive strategy or where the defendant can point to no specific evidence that would have been uncovered by a more thorough investigation).

Denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.  Marshall is not entitled to relief on this claim.

## VIII.   TRIAL COURT'S DENIAL OF MOTION TO DISMISS COUNSEL

Marshall claims that the trial court erred by denying his motion to dismiss trial counsel.   Marshall claims that he sought removal of his counsel because of "his stubbornness to investigate and interview witness[es]."[62]

Marshall asserted a pro se challenge to the denial of his motion on direct appeal. The Louisiana Fourth Circuit  made the following findings in connection with this issue:[63]

> Defendant filed a pro se motion to dismiss counsel on May 23, 1998.[64]  At that time trial was set for May 27.  Defendant filed another motion to dismiss counsel, identical to the first, on May 27.  A May 27 minute entry reflects that the trial court denied the motion to dismiss counsel on that date, and reset trial for June 3.  On June 3, the trial court denied the motion again, and reset trial until June 4.  On June 4 a status hearing was reset for June 5.  On June 5, trial was reset until July 2.  Trial was continued two more times until July 15.

(footnote in original).

The court determined that Marshall's motion was based on his assertion that counsel had not notified him of the motion filing deadlines.  The court found this assertion to be insufficient to warrant removal of counsel and to be otherwise unfounded. The court referenced in that regard Marshall's other timely filed pro se motions, including a motion to subpoena police records and two pro se motions to suppress the

---

[62]Rec. Doc. No. 1, Memorandum in Support, p. 39.

[63]State v. Marshall, 774 So.2d at 249-50; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2176, p. 8, 8/30/00.

[64]"1     The date on the motion's affidavit of service."

40

identification, which were resolved after two evidentiary hearings on the issue. The court also held that Marshall failed to allege that his counsel was unprepared or incompetent or that counsel had a conflict of interest.

In this federal habeas petition, Marshall alleges that the motion to dismiss counsel should have been granted because he would not investigate or interview witnesses. This is <u>not</u> the same ground forming the basis of the motion to dismiss counsel submitted to the state trial court, a copy of which is in the state court record.[65]  Nevertheless, reading his petition broadly, Marshall may be arguing that his counsel was ineffective and should have been removed from the case under <u>United States v. Cronic</u>, 466 U.S. 648 (1984).

In <u>Cronic</u>, the United States Supreme Court held that a defendant might be constructively denied counsel, although an attorney had been appointed to represent him. The <u>Cronic</u> court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  <u>Cronic</u>, 466 U.S. at 654 n. 11.  The <u>Cronic</u> presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of the defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." <u>Cronic</u>, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may

---

[65]St. Rec. Vol. 2 of 4, Motion to Dismiss Counsel, undated.

"the likelihood that the verdict is unreliable [be] so high that a case-by-case inquiry is unnecessary." Mickens v. Taylor, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for Cronic to apply "the attorney's failure must be complete." Bell, 535U.S. at 697. "For purposes of distinguishing between the rule of Strickland and that of Cronic," the Supreme Court held that a case does not come under Cronic merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. Bell, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." Bell, 535 U.S. at 697.

In the instant case, I have examined Marshall's complaints that counsel failed to investigate and failed to interview and call certain witnesses at trial. I have determined that none of the alleged failings by counsel amounted to unconstitutionally deficient performance or were prejudicial to the outcome of the case under the standards set forth in Strickland.

Under the Cronic analysis, counsel's unsuccessful tactical decisions also did not amount to a complete failure to put the prosecution's case to a legitimate test. Counsel challenged the veracity of Officer Brazley's zealous investigatory tactics and attempted to show that Brazley targeted Marshall or manufactured the accusations against him. Counsel also challenged whether a robbery even occurred and, if one did occur, whether Brazley unduly influenced Hudson's decision to select Marshall as one of the

42

perpetrators. This performance establishes a meaningful adversarial testing of the prosecution's case.

Counsel was not deficient under <u>Strickland</u> or <u>Cronic</u>. The trial court had no basis to remove Marshall's counsel from the case. Marshall has failed to make a showing that the denial of the motion to dismiss counsel was of a constitutional magnitude or denied him effective assistance of counsel.

The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Marshall is not entitled to relief on this claim.

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** that the petition of Ronald Marshall for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this ___31st___ day of March, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE